IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UTILITY CONSTRUCTION COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 22-860C |
| vs. | ) ) | Judge Solomson |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) | |

## JOINT PRELIMINARY STATUS REPORT

Pursuant to paragraphs 4 and 5 of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff, Utility Construction Company, Inc. (Plaintiff or UCC), and defendant, the United States, respectfully submit the following Joint Preliminary Status Report.

1. **Requirements of Appendix A, Paragraph 4**

    a. **Does the court have jurisdiction over the action?**

    Plaintiff states that this Court possesses jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491(a)(1) and 41 U.S.C.A. §7104(b)(1). Defendant is not aware at this time of any basis upon which to challenge this Court's jurisdiction.

    b. **Should this case be consolidated with any other case and, if so, why?**

    No.

    c. **Should trial of liability and damages be bifurcated and, if so, why?**

    No. The parties agree that any trial should include both issues of liability and issues of damages.

    Plaintiff's Additional Statement

    Plaintiff respectfully requests that this action move through an expedited discovery and partial summary judgment on liability with respect to its claim that Defendant terminated Contract

No. FA468619DA004 ("Contract") for convenience ("T4C"), while moving all other issues towards trial on the typical schedule outlined below. *Jacobs Engineering Group, Inc. v. United States*, 434 F.3d 1378, 1381 (Fed. Cir. 2006) (holding that a contractor could move for summary judgment on the issue of contract termination to obtain an order for reimbursement of costs incurred as a result of same). Plaintiff requests this because the Government has refused to stipulate that the Contract was terminated for convenience and has avoided any admission with respect to same. With respect to liability, Plaintiff believes the Court should consider summary judgment on the T4C in a shorter timeframe than the typical deadlines established in this matter so as to streamline the complicated factual questions that permeate Plaintiff's remaining causes of action. *See* Paragraph 1(h). This would also provide the parties with a more efficient option to reach the damages issues on the T4C more quickly, and perhaps reach a settlement on that basis.

With respect to all other claims, trial of liability and damages should not be bifurcated. Whether and to what extent the Government breached its subsequent obligations is inherently a mixed question of liability and damages. Bifurcating these two (2) issues could multiply litigation through the withholding of documents or artificial disputes about relevancy. It is more efficient to try both together. Beyond scheduling expedited discovery and partial summary judgment regarding the T4C, no other curtailment of the case is necessary or appropriate.

Defendant's Response:

It is undisputed that UCC's task order was terminated for convenience. The principal dispute between the parties is what damages, if any, are owed to UCC in connection with that termination.

A copy of the letter giving notice of the termination was attached to the complaint. *See* Complaint, Doc 1-13. It is undisputed that this attachment is an authentic copy of the notice.

Contrary to UCC's statement, we have offered to file a simple stipulation stating that the task order was terminated for convenience.  Accordingly, it is unclear what relief UCC seeks by filing an early motion for partial summary judgment merely to establish that the task order was terminated for convenience.  Perhaps more significantly, it is unclear what discovery UCC seeks to establish what we have offered to admit – and have admitted.

UCC asserts that its motion seeking a ruling that its task order was terminated for convenience would "streamline the complicated factual questions that permeate Plaintiff's remaining causes of action."  UCC does not say how this would happen, and we do not see how this would occur.

In its most recent calculation of termination for convenience damages, UCC seeks approximately $4.3 million for "Price for Out-of-Scope Effort and Unabsorbed Indirect Costs Due to Delay during 6/12/2020 thru 3/4/2022."  As UCC's title suggests, addressing this element of its damages claim requires not only the usual issues of cost accounting and factual predicates, but it also requires investigations of what efforts were "Out-of-Scope," what delays to the critical path occurred, who was responsible for those delays, and whether the responsibility for those delays was shared.  While such issues are not uncommon in construction litigation, it usually takes some time to address these issues in discovery, and in this case, we expect such discovery to take many months.  Even if the Court rules that UCC's task order was terminated for convenience, there will still be "complicated factual issues" permeating UCC's claim for termination for convenience damages.

UCC asserts that an early motion seeking a ruling that its task order was terminated for convenience "would also provide the parties with a more efficient option to reach the damages issues on the T4C more quickly."  We simply do not understand why UCC has made such a

statement.  To the contrary, even after the Court has ruled that UCC's task order was terminated for convenience, all damages issues will remain.  Indeed, the initial briefing period will only delay discovery about damages (including related issues about liability for delay and liability for "Out-of Scope" work).

The case cited by UCC is inapposite.  In *Jacobs,* the parties had agreed to a cost sharing clause as part of the contract.  *Jacobs,* 434 F.3d at 1379.  The termination for convenience clause at issue referred, in relevant part, to "all costs reimbursable under this contract," and the issue in dispute was whether the cost sharing provision should be applied when determining the amount of costs "reimbursable under this contract."  *Id.* at 1380.  There was no dispute about the amount of costs, and the parties made cross-motions for summary judgment focused upon the contract interpretation issue.  *Id.*

**d.      Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

No.

**e.      In cases other than tax refund actions, will a remand or a suspension be sought and, if so, why and for how long?**

No.

**f.      Will additional parties be joined?  If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

<u>Plaintiff's Statement</u>

Plaintiff reserves the question of joinder until Defendant reveals its approach to the defective specifications and drawings at issue in this matter, as that approach may necessitate

adding AECOM or other parties. Further, it is unknown what efforts Defendant has undertaken to obtain revised specifications from third parties, which may likewise necessitate adding other parties to the case. Plaintiff is aware of no factual or legal basis for any Government counterclaim, and disputes that there is any such basis.

<u>Defendant's Statement</u>

The United States is aware of no basis on which the Court would join additional parties pursuant to RCFC 19. Furthermore, the United States is aware of no party who might assert they should be joined pursuant to RCFC 20. This is a case concerning the contract rights of two parties in privity of contract. Even assuming that other parties may have relevant evidence, we know of no basis for pendant jurisdiction to make any other party liable to UCC.

This Court possesses jurisdiction to consider our liability to pay damages to UCC. Specifically, on May 26, 2022, UCC submitted a certified claim to the contracting officer for $14,925,418.03 (that included a termination settlement proposal in the amount of $9,268,604.28). Complaint, ¶ 3, August 5, 2022, ECF No. 1. UCC has appealed from a deemed denial of its certified claim for $14,925,418.03 to establish jurisdiction for this action. *Id.*

In the event that the United States may file a counterclaim, then this Court will have jurisdiction to consider UCC's liability to pay damages to the United States. We are not aware of any jurisdiction to consider UCC's claims against any third parties, or the claims of the United States against any third parties.

**g.    Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and if so, what is the schedule for intended filing?**

<u>Plaintiff's Statement:</u>

With respect to all issues other than the termination for convenience, T4C, which Plaintiff

requests to brief for summary judgment on an expedited basis (*See* Paragraph 1(c)), Plaintiff reserves the question of whether dispositive motions will be filed until the close of discovery.

Defendant's Statement:

The United States does not anticipate filing any such motion at this time.

  g.  **What are the relevant factual and legal issues?**

Plaintiff's Statement:

Whether the Government's actions under the Contract constitute a breach of contract clauses and/or breach of contract based upon: cardinal change in the Contract and bad-faith termination; constructive change in the Contract and Government delay; appropriate adjustment of the contract price due to the foregoing; reasonable costs and expenses associated with T4C to the extent it was not in bad faith; and breach of duty of good faith and fair dealing. As a threshold matter, Plaintiff believes many of the Government's issues are inappropriate and largely irrelevant, and also worded improperly and in an extremely argumentative manner; for this reason, Plaintiff does not accept the Government issues as worded. Many of the issues also betray a complete lack of review of the pertinent documents by the Government in preparation for this report and, therefore, present issues based upon nothing more than supposition and prejudice.

The Task Order in this case began as a fixed-price construction contract with Government-provided drawings and specifications that were warranted as one-hundred percent complete by both the Government and the designer of record, AECOM. Plaintiff provided the Government with a schedule for construction and mobilization on June 5, 2020, and on June 8 and 11, 2020, the Government warned UCC that it must "show progress" or that funding would be pulled. On June 25, 2020, the Government approved UCC's schedule and required it to mobilize its equipment to the site, which UCC had as of June 11, 2020. The Government approved Plaintiff's

mobilization in writing on July 1, 2020, and then approved payment for same on July 2, 2020. For the Government to now complain that UCC should not have followed the approved schedule and mobilized is inappropriate.

After performance on the Contract began, Plaintiff learned on or about October 27, 2020, that the drawings and specifications were incomplete and defective for reasons that were far from apparent, were hidden by the Government from Plaintiff, causing extras cost and delay, and that direction on how to proceed was necessary. This was formally presented to the Government in RFI No. 5 on February 9, 2021, although the issues were discussed weekly beginning at the time issues began to surface in August/September 2020. Instead of sending the defective drawings and specifications back to AECOM with the issues raised, the Government directed Plaintiff to do the redesign. This was done on February 24, 2021, when the Government approved RFI No. 5 and directed UCC to proceed with the redesign; at the time, the Government knew this direction was beyond the scope of Plaintiff's Contract. This is confirmed because on December 8, 2020, Mr. Edward Oh, a Government engineer on the Contract, stated that the design "work is clearly not part of the contract," but then emphasized that "[t]his will not prevent you from starting construction as soon as possible," On May 10, 2021, Bridge View Resources, LLC, an engineering firm the Government recommended, issued a written opinion confirming that the drawings and specifications for the project were grossly defective and that it was "not constructable nor can the main transformers be ordered without substantial modifications," and recommending numerous changes. Several RFIs were thereafter submitted that the Government approved and added causes for Government delay. REAs and change orders were also submitted, but most were not approved. Ultimately, the Government added no funding to the Contract for design, and to this day has not paid for the redesign.

On September 8, 2021, the Government suspended work on the Contract in writing, except for "both design and ordering of materials," which it directed to continue. The Government also directed that UCC be "ready to resume work once this situation has been resolved." Starts and stops ensued over the coming months, and then on March 4, 2022, when UCC was almost done with the redesign, the Government partially terminated the Contract for convenience. The Government directed that the work for transformers continue and that they be delivered, which they were, without full payment. The bonding on the Contract was not released by the Government until September 22, 2022, which substantially tied up UCC's bonding capacity.

To date, the Government has not stipulated that the Contract was terminated for convenience, and that the pertinent clauses for cost recovery of all reasonable, allocable, and allowable costs are governed by FAR 52.249-2 and Alternate 1, as specified in the Master Contract. Failing a stipulation on this, a separate procedure where quick discovery and motions for summary judgment as to liability can be filed would be appropriate.

In addition to the foregoing, present issues, which may expand, include:

Relevant Factual Issues

1. Whether the Government knew the design was incomplete, subject to changing infrastructure, and incomplete at the time it represented otherwise during bidding to UCC?

2. Whether the design work directed by the Government, which was out of the scope of the Contract, caused UCC to hire numerous subcontractors and incur significant costs to perform, including delay and usage costs for owned equipment, all of which is recoverable?

3. Whether the directions by the Government in Issue 1 and the T4C render irrelevant any issues concerning UCC's alleged lack of expertise in design or alleged shortcomings in

performance, none of which are conceded by UCC?

4. Whether it was proper for UCC to follow the approved schedule and mobilize it's equipment as required by the Government, and whether UCC satisfies the *Eichleay* prerequisites for delay damages?

5. Whether defective drawings and specifications, along with the specific issues in the RFIs, are the primary reasons for UCC's delay in performance and ordering of materials, including the transformer, – for which compensation is recoverable.

Relevant Legal/Expert Issues

1. Whether the Contract was terminated for convenience, triggering cost recovery of all reasonable, allocable and allowable costs pursuant to FAR 52.249-2 and Alternate 1, as specified in the Master Contract.

2. Whether the design and related work was directed by the Government, and whether it was out of scope of the Contract, making lost profits recoverable.

3. Whether there was a continuing requirement for work covered by UCC's contract at the time of the partial termination, making the termination in bad faith and, therefore, lost profits recoverable.

4. Whether UCC's revised claim presents a proper basis for damages recovery.

5. Whether, under the contract and applicable law, UCC is limited to depreciation, or whether it may recover an equipment usage rate, on owned standby equipment, and what is the proper rate?

6. Having satisfied the *Eichleay* prerequisites, whether UCC has provided both a reasonable method for allocation of its overhead costs and a reasonable calculation of its daily rate under the facts of this case?

7. Whether the certain management personnel of UCC dedicated significant unanticipated time to the contract, making it proper for their time to be recovered as a direct cost?

Defendant's Statement:

Relevant Factual Issues

1. Whether UCC lacked the necessary engineering expertise to perform the task order, and so was required to promise to hire an engineer before being permitted to compete for the task order award.

2. Whether certain engineering services subcontracted by UCC following task order award were services within the scope of the task order.

3. Whether UCC mobilized management staff and pick-up trucks from Arizona to the vicinity of Beale Air Force base in California in July 2020.

4. Whether it was reasonable for UCC to move management staff and vehicles from Arizona to California in July 2020 when the critical path on UCC's approved schedule was the preparation of engineering submittals that could have been prepared in Arizona.

5. Whether UCC mobilized management staff and pick-up trucks from Arizona to the vicinity of Beale Air Force base in California in July 2020 because UCC had a different and additional task order for work at Beale Air Force base.

6. Whether UCC's unfamiliarity with relevant engineering issues in the summer of 2020 was a significant cause for UCC's delay in preparing required engineering submittals.

7. Whether UCC submitted dozens of requests for information in 2021, many months after the task order was awarded, to cover for its own lack of knowledge and delay, and to seek to establish a predicate for a claim.

8. Whether UCC asked the United States to add design tasks to the scope of work of

UCC's task order.

9. Whether UCC purposefully delayed certain construction work to match its anticipated schedule for acquiring a transformer needed to complete its task order.

10. Whether UCC unreasonably delayed ordering a transformer in 2020 and 2021.

11. Whether the United States repeatedly gave UCC every opportunity to show progress on the task order.

12. Whether UCC continued to demonstrate lack of any reasonable rate of progress into 2022.

13. Whether construction equipment that UCC claims to have mobilized to Beale Air Force base for use on the task order was actually mobilized to that location, and mobilized for that purpose.

14. Assuming that the construction equipment claimed to have been mobilized to Beale Air Force base for use on the task order was mobilized for that purpose, whether it was reasonable to do so when UCC was planning no construction activity on the task order.

15. Whether UCC applied any COVID relief funds received from the United States to any direct costs or indirect costs charged to the task order.

16. Whether COVID affected UCC's business in the years from 2020 through 2022.

17. Whether UCC has accounted for the impact of COVID when making its lost profits claim.

18. Whether UCC has followed its own accounting categories and indirect cost allocation practices when calculating the damages alleged in the amended complaint.

19. What was the critical path for the task order work as performed.

20. What days of delay, if any, were caused solely by the United States.

Relevant Legal Issues

1. Whether there was a reasonable and good-faith basis to terminate the task order for convenience in March 2022.

2. Whether a contracting officer gave any oral direction to UCC to perform work outside the scope of the task order.

3. Whether a request from a contracting officer to UCC for a proposal for work outside the scope of the task order is deemed to be direction to perform the additional work.

4. Whether persons with contracting authority to act for the parties ever agreed to expand the scope of work of the task order.

5. Whether the United States is liable for costs incurred by UCC at its own risk, in the hope that the task order might be amended in the future.

6. Whether UCC may claim management salaries as direct costs in damages alleged in this action, where UCC's regular accounting practice is to record those salaries as general and administrative (G&A) indirect costs.

7. Whether UCC may claim hypothetical equipment costs in damages alleged in this action, where such costs exceed the costs for equipment actually incurred and recorded in UCC's financial database.

8. Whether UCC has improperly added labor overhead costs to its calculation of an Eichleay rate in damages alleged in this action.

9. What amount of money, if any, is owed to UCC in connection with the termination for convenience of the task order beyond the amounts already paid to UCC for the task order.

**i.      What is the likelihood of settlement?  Is alternative dispute resolution contemplated?**

Plaintiff's Statement:

Plaintiff is and has been open to settling this matter with Defendant on reasonable terms. Plaintiff believes alternative dispute resolution ("ADR") is appropriate in this case and recommends ADR at the earliest stage possible.  The parties met in December 2022, following preliminary discussions in October 2022.  Discussions continued into early January 2023, but settlement efforts have not yet succeeded.  Plaintiff has offered to continue settlement discussions and requested that the parties proceed to mediation using the Court's ADR program, however, Defendant has chosen to forego such efforts at this time.

Defendant's Statement:

The United States considers settlement unlikely at this time because the United States has already made suggestions based upon generous factual assumptions, and yet the parties remain far apart.  The United States would not agree to such generous factual assumptions as a predicate to ADR discussions.  At this time, we have not yet had the discovery necessary to make a factual presentation to an ADR judge.

**j.      Do the parties anticipate proceeding to trial?  Does either party, or do the parties jointly, request expedited trial scheduling, and, if so, why?  The requested place of trial shall be stated. Before such a request is made, the parties shall confer specifically on this subject.**

The parties anticipate proceeding to trial.

Plaintiff's Statement:

Plaintiff respectfully suggests that trial take place in Houston, Texas, a place requested by

Plaintiff that is central to all parties and third parties involved in the dispute, which are spread coast to coast.

Defendant's Statement:

The United States respectfully suggests that trial take place in Sacramento, near the Air Force base where the work was performed.

k. **Are there special issues regarding electronic case management needs?**
No.

l. **Is there other information of which the court should be aware at this time?**

The parties have agreed to the following discovery limits: twelve (12) depositions by each party for fact witnesses (including party depositions); twenty-five (25) interrogatories; fifty (50) requests for admissions.

Plaintiff's Statement:

First, a notice, dated March 4, 2022, for "termination for convenience; repair Pave Paws substation," was attached to the complaint that initiated this action. Complaint, Doc 1-13, August 5, 2022, ECF No. 1. Plaintiff has asked the Government to stipulate as to liability consistent with the T4C clauses in the Contract. The Government says it does not understand, and has attempted to conflate the issues of liability for this with damages to avoid it. The Defendant has also presented numerous issues that challenge liability for work the government asked or required to performed, whether or not out of scope. For example, the Government has suggested that the defects weren't that bad and the delay is UCC"s fault, despite experts and Government engineers saying otherwise, while at the same time suggests that UCC should not have either mobilized or done the redesign as the Government required. The Government also challenges the amount of time spent on redesign by those in management at UCC, and rejects the proper allocation of costs in the revised claim, even though the Government required management and expert involvement

14

at every step in the redesign. The Government even suggests that UCC should not be paid for this work they directed in writing because it did not issue a formal modification and fund it with the right color of design money. This is ridiculous. Ultimately, the Government coyly acknowledges the T4C document, while simultaneously rejecting the natural effect of it; namely, to convert this fixed price Task Order into a cost-based contract for all authorized work. If necessary, UCC would ask for a short period of targeted discovery and a timeline to file a motion for summary judgment to establish liability for a T4C, perhaps no later than July, 2023. Specifically, Plaintiff requests the following expedited discovery and summary judgment schedule with respect to the T4C liability issue only:

| **Proposed Deadline** | **Event** |
|---|---|
| July 11, 2023 | Fact Discovery Deadline |
| August 11, 2023 | Dispositive Motions Deadline |
| August 25, 2023 | Response Briefing Deadline |
| September 1, 2023 | Reply Briefing Deadline |

Second, the Government has expressed an intention to send subpoenas to third party subcontractors of Plaintiff. This is an issue to which UCC has objected. It also necessitates a protective order consistent with that requested in Plaintiff's Motion sooner rather than later (Doc 13). There are about fifteen (15) subcontractors and third parties involved in this case, and Plaintiff is in in the process of issuing subpoenas to them. Plaintiff does not agree with the Defense, which, quite frankly, poses a position undersigned counsel has faced with no other lawyer at the Justice Department, and ignores that there is substantial proprietary and trade secret information at issue here, including the undelivered design and UCC's pricing /cost approach to this work, which continues to be a requirement for the Government. *See Apple, Inc. v. Samsung Electronics Co, Ltd.*, 727 F.3d 1214 (Fed. Cir. 2013) (finding that the district court erred when it failed to consider technical and financial information as protectable trade secrets).

15

Third, Plaintiff may have further issues with electronic discovery depending on the approach taken by third parties and the manner in which contract files are kept. The parties also do not yet have a firm agreement on the scope of search terms, but have discussed preliminary search terms. Given the issues, the Governments approach to relevance is clearly different in this case, and Plaintiff may need assistance from the Court regarding this issue if it persists.

Defendant's Statement:

UCC suggests that all discovery concerning its damages claims arising from the termination for convenience can be completed by July 11, 2023. This contention lacks merit.

First, such discovery is inconsistent with the professed goal of UCC's early motion: to declare that its task order was terminated for convenience. A determination of damages owed in connection with that termination would require extensive briefing on a variety of topics. More importantly, we are entitled to discovery before such briefing. Even after discovery, it is unlikely that there will be no genuine issue of material fact concerning damages.

As noted above, in its most recent calculation of termination for convenience damages, UCC seeks approximately $4.3 million for "Price for Out-of-Scope Effort and Unabsorbed Indirect Costs Due to Delay during 6/12/2020 thru 3/4/2022." As UCC's title suggests, addressing this element of its damages claim requires not only the usual issues of cost accounting and factual predicates, but it also requires investigations of what efforts were "Out-of-Scope," what delays to the critical path occurred, who was responsible for those delays, and whether the responsibility for those delays was shared. The delay issues alone will require extensive discovery, and probably will require the assistance of schedule experts when the parties present the issues to the Court.

In UCC's statement, UCC suggests that it is obvious that the United States was

16

responsible for all delays, but it is not obvious.  We could offer examples.  In any event, these issues are best presented to the Court after a fair opportunity for discovery, and, perhaps, after an opportunity to obtain expert testimony about the delays.

We appreciate that UCC has reduced its termination settlement proposal from $9,268,604.28 in August to less than half that amount now after UCC discovered certain accounting errors.  However, in our view, UCC's settlement proposal is still grossly inflated in a number of ways.  Some of the inflation results from accounting errors, and some results from mistaken factual predicates.  It will take many months of discovery to address the many issues.

UCC's second point concerns its motion for a protective order.  We have filed a response to UCC's motion, and we rely upon that response here.

UCC's third suggestion merely speculates that discovery issues may arise in the future.  We are not aware of any discovery dispute now.  We intend to cooperate in discovery, and to attempt to resolve any disputes with UCC without the intervention of the Court.  Of course, if disputes arise that cannot be resolved, the matters can be presented to the Court at that time.

**2.** **Appendix A, Paragraph 5**

    a.  **Plaintiff's Proposed Initial Discovery Plan**

| **Proposed Deadline** | **Event** |
|---|---|
| July 11, 2023 | Fact Discovery Deadline |
| August 11, 2023 | Dispositive Motions Deadline |
| August 25, 2023 | Response Briefing Deadline |
| September 1, 2023 | Reply Briefing Deadline |

    b.  **Joint Proposed Discovery Plan**

May 22, 2023                Initial Disclosures deadline

June 13, 2024              Completion of fact discovery

July 12, 2024              Expert reports deadline

| | |
|---|---|
| August 12, 2024 | Expert rebuttal reports deadline |
| September 20, 2024 | Completion of expert discovery |
| October 18, 2024 | Deadline to file dispositive motions |

Respectfully submitted,

/s/ Bryant S. Banes

Bryant S. Banes
Texas State Bar No. 24035950
Federal ID No. 31149
Sean D. Forbes
Texas State Bar No. 24040916
Federal ID No. 603610
Sarah P. Harris
Texas State Bar No. 24113667
Federal ID No. 3421904
NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas 77027
Telephone: (713) 629-1800
Facsimile: (713) 629-1812
bbanes@nhblaw.com
sforbes@nhblaw.com
sharris@nhblaw.com

*Attorneys for Plaintiff*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ James W. Poirier
JAMES W. POIRIER
Trial Attorney
Civil Division
Commercial Litigation Branch
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
James.poirier@usdoj.gov
Tel: (202) 598-7547

*Attorneys for Defendant*

May 11, 2023